IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM WEYANDT, *et. al.*, | : | 1:19-cv-1018 |
| Plaintiffs, | : | Hon. John E. Jones III |
| v. | : | |
| PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATIONS, *et. al.* | : | |
| Defendants. | : | |

## **MEMORANDUM**

## **October 15, 2019**

Presently pending before this Court are two Motions to Dismiss filed by Defendant Pennsylvania State Corrections Officers Association ("PSCOA"), (Doc. 19), and by Defendants Thomas W. Wolf, Michael Newsome, and Brian T. Lyman ("Commonwealth Defendants"), (Doc. 20). Because both Motions raise similar arguments, we will address them together. For the reasons that follow, we shall grant both motions.

## I. FACTUAL BACKGROUND

We take the following from Plaintiffs' Complaint and assume it to be true, as we must. Where Plaintiffs' Complaint is lacking, we take from the record of the case, as we are permitted to do.[1]

The instant case alleges a constitutional violation in a Collective Bargaining Agreement ("CBA") which governs Plaintiffs' employment by the Commonwealth of Pennsylvania. Plaintiffs argue that provisions mandating continued union membership and payment of union dues violate their First Amendment rights as articulated by the Supreme Court in *Janus v. AFSCME.* 138 S. Ct. 2448 (2018).[2] Plaintiffs bring this claim on behalf of themselves and a putative class of similarly situated employees.

Plaintiffs William Weyandt, Mark Mills, Chris Taylor, Brandon Westover, and Cory Yedlosky are Commonwealth employees at Huntington Correctional Institution. (Doc. 1 at ¶ 2). Their positions are subject to the Public Employee Relations Act, 43 P.S. § 1101.301(1), under which Defendant PSCOA negotiates

---

[1] *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint [and] matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case").

[2] In *Janus*, the Supreme Court held that it was a violation of an employee's First Amendment rights to require an "agency fee" to be deducted from a non-union member employee's wages to support "activities germane to the union's collective-bargaining activities." 138 S. Ct. 2448 (2018). While the Court acknowledged that all employees benefit from the collective bargaining activities of the union, an employee's Free Speech rights outweigh that benefit and entitle him to refrain from monetarily supporting the ideas espoused by a union. *Id.*

the terms of Plaintiffs' employment with the Commonwealth. *Id.* at ¶ 9-10. Defendant PSCOA is a union which exclusively represents all Commonwealth Correctional Officers and Forensic Security Employees in collective bargaining with the Commonwealth. *Id.* at ¶ 3; 11. Commonwealth Defendants Thomas W. Wolf, Michael Newsome, and Brian T. Lyman are Commonwealth officials being sued in their official capacities as Governor, Secretary of the Office of Administration, and Chief Accounting Officer, respectively. *Id.* at ¶ 4-6. The assertedly violative CBA was negotiated between Defendant PSCOA and the Commonwealth and is effective from July 1, 2017 to June 30, 2020. *Id* at ¶ 10.

Plaintiffs object to two specific provisions of the CBA as violative of their First Amendment rights: the "membership-dues-deduction" clause and the "Association Security" provision. *Id* at ¶ 17-23.

The CBA's "membership-dues-deduction" clause requires that union membership dues be deducted on a biweekly basis from the pay of employees who request, in writing, that such deductions be made. *Id.* at ¶ 18. The clause further states that authorization for dues deduction is irrevocable before the end of the current CBA. *Id.* The "Association Security" provision provides that union members may only resign their membership in the fifteen (15) day period before the expiration date of the current CBA. *Id.* at ¶ 19. When read together, Plaintiffs

argue, these provisions violate Plaintiffs' First Amendment right to not subsidize union speech, as articulated in *Janus*. *Id.* at ¶ 20; 138 S. Ct. 2448 (2018)

All named Plaintiffs joined the union and signed dues deduction authorization cards prior to June 27, 2018. (Doc. 1 at ¶ 25). On or about December 17, 2018, Plaintiff William Weyandt sent a letter to PSCOA in which he resigned his union membership and revoked his dues deduction authorization. *Id.* at ¶ 26. On December 21, 2018, PSCOA informed Weyandt that his request would not be honored due to the restrictions under the CBA and was told that he could discontinue his union dues deductions in the 15 days prior to the expiration of the CBA, as indicated in the "Association Security" provision. *Id.* at ¶ 27.

On June 12, 2019, Plaintiffs' counsel notified PSCOA that Plaintiffs Weyandt, Mills, Taylor, Westover, and Yedlosky resigned their union memberships and revoked any dues deduction authorization forms they had signed. *Id*. at ¶ 28. On June 14, 2019, Plaintiffs initiated this action, seeking declaratory and injunctive relief, as well as nominal and compensatory damages. (Doc. 1).

Since that filing, Defendant PSCOA has undertaken significant steps to alter their current membership practices under the CBA. On or about July 19, 2019, PSCOA notified Plaintiffs that it was honoring their requests to resign from the union and to revoke their dues deduction authorizations. (Doc. 26 at 5). At the same time, PSCOA notified the Commonwealth to cease dues deductions for

Plaintiffs. *Id*. On or about August 9, 2019, PSCOA sent each named Plaintiff a check reimbursing them for the amount of dues deductions individually paid since they had sent written notification to PSCOA of their intent to resign their memberships and revoke their dues deduction authorizations. *Id.* at 6.

On August 9, 2019, PSCOA and the Commonwealth also entered into a Side Letter amending the CBA, providing that "any member of [PSCOA] may resign from membership at any time by notifying the Association in writing." *Id*. at 7. The Side Letter also states that "upon notification from [PSCOA], the Commonwealth shall cease [PSCOA] dues deductions for said individual." *Id*. at 8.

Defendant PSCOA filed the instant Motion to Dismiss on August 16, 2019. (Doc. 19). Commonwealth Defendants also filed a separate Motion to Dismiss on August 16, 2019. (Doc. 20). All Defendants filed briefs in support on August 30, 2019 (Docs. 24; 26). Plaintiff filed a consolidated brief in opposition, addressing the arguments raised by all Defendants on September 13, 2019 (Doc. 30). PSCOA filed its reply brief on September 26, 2019. (Doc. 32). Commonwealth Defendants filed their reply brief on September 27, 2019. (Doc. 33). The Motions are therefore ripe for disposition.

## II. DISCUSSION

Both the Commonwealth Defendants and PSCOA move to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction)

and Rule 12(b)(6) (failure to state a claim upon which relief can be granted) of the Federal Rules of Civil Procedure. Both the Commonwealth Defendants and PSCOA argue that Plaintiffs' claims are moot under Rule 12(b)(1). All Defendants also argue that Plaintiffs have failed to adequately plead a claim for relief under Rule 12(b)(6). The Commonwealth Defendants raise a separate argument under Rule 12(b)(1) that Plaintiffs' claim is barred by Eleventh Amendment immunity. For the reasons set out below, Defendants' Rule 12(b)(1) motion shall be granted because Plaintiffs' claim is moot. Having concluded that this Court lacks jurisdiction to hear the case, it is neither necessary nor appropriate to rule on the alternative motions. *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

### a. Rule 12(b)(1) Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack considers only the allegations of the complaint to determine whether the claim sufficiently alleges subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." *Id.* (citing *Mortensen*,

6

549 F.2d at 889-92). "A factual attack ... is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction." *Id*. The plaintiff retains the burden of demonstrating subject matter jurisdiction. *Gould*, 220 F.3d at 178.

      **b. Discussion**

Defendants' attack is undisputedly factual. Defendants do not argue that Plaintiffs failed to sufficiently plead jurisdiction, but, rather, that their claims have since been mooted by Defendants' payment of complete relief and by the amendments to the CBA via the Side Letter. Thus, we consider whether evidence outside the pleadings moots Plaintiffs' claim.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Article III requires that litigants have "a legally cognizable interest in the outcome" of the litigation. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 397 (1980). This concept is referred to as the "personal stake requirement," and requires a litigant to demonstrate that he or she "has sustained or is immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing,

7

present adverse effects." *Id.* at 102, 103 S.Ct. 1660. This requirement "serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving," *Geraghty*, 445 U.S. at 397, and ensures "concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Lyons*, 461 U.S. at 101, 103 S.Ct. 1660.

The Third Circuit has further held that a claim is moot when: "(1) the alleged violation has ceased, and there is no reasonable expectation that it will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985).

Defendants argue that Plaintiffs' claim has been rendered moot by "interim relief or events" that have "completely and irrevocably eradicated the effects of the alleged violation" and that "there is no reasonable expectation that it will recur." *Id.* They note that the named Plaintiffs have been permitted to withdraw from the union and have been reimbursed for the dues deductions they had paid since informing PSCOA in writing of their desire to cease membership. (Doc. 24 at 14; Doc. 26 at 12). This, they argue, alleviates any alleged injury to the named Plaintiffs that it would be appropriate for this Court to address. *Id.* In addition, Defendants argue, PSCOA and the Commonwealth have entered into a Side Letter permitting all union members to withdraw at any time and stating that dues

deductions will cease when PSCOA notifies the Commonwealth to stop deductions. (Doc. 26 at 12). Defendants argue that this Side Letter provides all requested relief and moots Plaintiffs' class claim as well. *Id.*

We agree. Both the named Plaintiffs' claim and the putative class claim have been rendered moot by the subsequent actions of PSCOA and the Commonwealth. The named Plaintiffs have been allowed to resign their union memberships as requested. (Doc. 24 at 14; Doc. 26 at 12). They were also fully refunded for the dues they paid in the time period between revoking their dues authorizations and the date dues were no longer deducted from their pay. *Id.*

The named plaintiffs have therefore been put in the same position they would have been in had they been allowed to resign their union memberships at the time they notified PSCOA of their desire to do so. Due to this relief, we are not "capable of resolving" the present dispute because it is "unaccompanied by any continuing, present adverse effects." *Geraghty*, 445 U.S. at 397; *Lyons*, 461 U.S. at 102-03. Plaintiffs have been made whole from the alleged violation of the CBA, and there is no more relief that can be proscribed for them by this Court.

Defendants similarly argue that the Side Letter executed between PSCOA and the Commonwealth on August 12, 2019 effectively amended the CBA to moot the Plaintiffs' class claims. The Side Letter eliminates the "maintenance-of-membership" provision and allows any member of the union to resign their

membership at any time. (Doc. 30 at 10; Doc. 32 at 4; Doc. 33 at 5). In addition, the Side Letter provides that, upon notification by PSCOA, the Commonwealth will cease deducting union dues from individual members. (Doc. 30 at 10; Doc. 32 at 4; Doc. 33 at 5).

Defendants further argue that voluntary cessation of a policy can moot a claim when the "likelihood that a defendant will resume the same allegedly unlawful conduct is speculative." (Doc. 24 at 8). The Commonwealth Defendants cite several Third Circuit opinions which hold that a change in law or policy renders it unlikely that a defendant will resume the allegedly unlawful conduct that lead to the suit, thereby mooting the relevant claim.[3] In addition, Defendants argue that under the new Side Letter, Plaintiffs would have to re-authorize the collection of dues for this alleged harm to recur, thereby making recurrence speculative at best. (Doc. 24 at 11).

Lastly, Defendants argue that the putative class cannot be afforded any actual relief under the current circumstances. They argue that the Side Letter provides all requested relief because it allows any PSCOA member to resign union membership at any time and cease the dues deductions from their pay. (Doc. 26 at 14). The alleged violation of putative class members' First Amendment rights no

---

[3] *Thompson v. United States Dep't of Labor*, 813 F.2d 48, 51 (3d Cir. 1987); *Marcavage v. Nat'l Park Service*, 666 F.3d 856, 857-858 (3d Cir. 2012) (holding that a protester's claim was moot because the citation he was issued for protesting without a permit was not reasonably likely to recur because of subsequent changes to regulations).

longer exists due to intervening events, and so, Defendants argue, this claim has been rendered moot.

For reasons similar to those stated previously regarding the named Plaintiffs, we agree. Plaintiffs' class claim is mooted by Defendants' Side Letter because interim events have alleviated any alleged harm that may have been done to Plaintiffs' putative class and that possible harm is unlikely to recur.

Plaintiffs make several discrete arguments against the mootness of their claims, which we shall address in turn. Regarding the named Plaintiffs' claim, Plaintiffs argue that Defendants have not fully satisfied the named Plaintiffs' claims because Plaintiffs Westover, Taylor, Yedlosky, and Mills would have resigned their memberships and revoked their dues deductions in January 2019, not June 2019, had the CBA not prohibited them from doing so. Plaintiffs therefore argue that the named Plaintiffs have not been afforded complete relief, and their claims are not mooted because they are still due damages for the amounts deducted from their wages during that six-month period.

We find this argument to be unconvincing. Defendants could not have known in January 2019 that the named Plaintiffs wished to cease membership in the union because they were not informed of that desire until June 2019. Defendants therefore could not have made a decision until that time. Indeed, Plaintiffs have presented no evidence supporting their claim beyond the

Declarations of the named Plaintiffs, which stated that it was their intention to resign the union in January, not June. We will not hold Defendants liable for monies that the named Plaintiffs had explicitly authorized the Commonwealth to deduct.

Furthermore, the status quo in this case did not change from January 2019 to June 2019. Nothing in the CBA had yet been amended, nor had the Side Letter been executed.[4] We find it paradoxical, then, that the named Plaintiffs would argue that the only reason they did not submit their resignations in January was because the provisions of the CBA precluded them from doing so. Those same circumstances existed in June, at which time the Plaintiffs did revoke their dues authorizations.

Therefore, we find that the named Plaintiffs have been put in the same position they would have been in had they been allowed to resign their memberships in the union at the time they submitted their written notifications. There is no live controversy and no actual relief that may be afforded by this Court as pertains to the named Plaintiffs, and so we shall find their claim mooted and will dismiss it in all respects.

---

[4] We note that *Janus* had been decided in 2018, and so the legal landscape provided identical arguments in both January 2019 and June 2019 as well.

Regarding their class claim, Plaintiffs, argue that the Side Letter grants PSCOA "discretion to determine whether the Commonwealth will stop deducting union dues from employees' wages" after the employee has notified PSCOA of her desire to cease union membership and dues deductions, but does not *require* such action. Therefore, Plaintiffs argue, it is possible that future employees who do not wish to subsidize the speech of the union, and so seek to cease membership, may be forced to continue to pay dues if PSCOA does not direct the Commonwealth to stop the deductions. Because of such a possibility, Plaintiffs argue, their class constitutional claim has not been rendered moot and there is still alleged harm for which they may be accorded relief.

Plaintiffs further argue that even if the Defendants:

> claim they will interpret their Side Letter to allow for immediate cessation of dues deductions, that nonbinding claim would be insufficient to moot proposed class members' claims . . . Defendants could change how they enforce their Side Letter at any time. In fact, PSCOA can unilaterally change how the Side Letter's dues deduction terms are enforced because those terms give PSCOA sole authority to determine whether the Commonwealth will stop dues deductions. For example, PSCOA could unilaterally institute a maintenance of membership restriction under the Side Letter simply by declining to instruct the Commonwealth to stop deducting union dues from employees who object to those deductions during the life of the CBA. (Doc. 30 at 11).

Plaintiffs also contend that their class claim is not moot because Defendants can alter the Side Letter at any time, and argue that "it is possible, if not likely" that Defendants would do so after the dismissal of the instant case. Plaintiffs therefore

13

believe their claim is not moot because declaratory and injunctive relief are still necessary, especially, they argue, in light of the fact that Defendants continue to defend the constitutionality of the original provisions.

We find these arguments unpersuasive. As Defendants note, there is a presumption that interim changes rendering a claim moot are entitled to a presumption of good faith. *Marcavage*, 666 F.3d at 861. Plaintiffs argue that Defendants may amend the Side Letter or fail to promptly inform the Commonwealth that dues deductions should cease for former members. But they offer no evidence to support these allegations. We decline to find a live controversy is present here merely because Plaintiffs allege that future harm *might* occur. We give Defendants the benefit of assuming they are acting in good faith and will honor their agreements absent evidence to the contrary. We therefore decline to find that Defendants' possible future actions allow this claim to survive. Should Plaintiffs' fears be realized, they are welcome to bring suit against Defendants again. Until such time as Plaintiffs face present, actual harm, however, we find this claim to be moot.[5]

---

[5] Plaintiffs make similar arguments regarding the claim of the named Plaintiffs as well. (Doc. 30 at 14) ("Absent binding injunctive relief, the Commonwealth and PSCOA could start seizing union dues from Plaintiff Employees' wages again"). This argument is equally unpersuasive. Defendants are entitled to a presumption of good faith in their subsequent actions concerning the named Plaintiffs as well and so we decline to hold this case is not moot based upon these arguments.

Plaintiffs also argue that their claim is not mooted because the CBA and Side Letter are set to expire in 2020, at which point there is no guarantee that the putative class will not again suffer an alleged First Amendment violation under the new CBA. This argument fails for the same reasons as those stated above. It is not appropriate for us to provide relief for abstract, future harms which may never occur. Should the new CBA negotiated between PSCOA and the Commonwealth fail to protect employees' First Amendment rights, Plaintiffs are welcome to again file suit. Until that time, we see no concrete harm that may, at present, be appropriately addressed by this Court.

Finally, Plaintiffs argue that there is still relief that may be accorded to the class members in the form of a declaratory judgment "providing written notice that CBA Article 3 and maintenance of membership practices are unconstitutional and unenforceable, that [employees] have the right to stop the deduction and collection of union dues from them at any time, and an opportunity to retroactively exercise that right." (Doc. 1 at ¶ D; Doc. 30 at 12). Plaintiffs argue that this type of relief is "commonly awarded when unions mislead employees about their right to refrain from subsidizing union speech." However, we have already held that Plaintiffs' claim is moot, and providing such declaratory relief would require us to reach the merits of a mooted claim. We cannot reach the merits of Plaintiffs' allegations that

Defendants' actions were unlawful, and therefore we cannot issue a declaratory judgment to that effect.

Plaintiffs seem particularly concerned that this declaratory judgment serve as notice to the putative class of their new rights under the Side Letter. (Doc. 30 at 12-13). A declaratory judgment is not the appropriate vehicle for this notice. Plaintiffs, or any interested parties for that matter, are free to publicize the contents of the Side Letter and to inform employees of their right to resign from the union. However, Plaintiffs have presented no argument that Defendants are required to notify putative class members of the change, and it is inappropriate for the Court to do so in this case.

### III.  CONCLUSION

For the reasons stated above, we grant both the PSCOA's Motion to Dismiss, (Doc. 19), and the Commonwealth Defendant's Motion to Dismiss, (Doc. 20).